UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUDREY AIKENS,

          Plaintiff,                    No. 15-12016

v.                                      District Judge Linda V. Parker
                                      Magistrate Judge R. Steven Whalen

JOLANDRA MACK, ET AL.,

          Defendants.

_____ /

**REPORT AND RECOMMENDATION**

On June 3, 2015, Plaintiff Audrey Aikens, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* complaint under 42 U.S.C. § 1983, alleging violation the Eighth Amendment [Doc. #1]. Before the Court are motions for summary judgment filed by Defendants Jolandra Mack [Doc. #21] and Krista Boyd [Doc. #30], which have been referred for Reports and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). Because these Defendants are entitled to qualified immunity, I recommend that both motions be GRANTED.

## I.    FACTS

On January 4, 2015, Ms. Aikens was housed in the Level IV unit of the Huron Valley Correctional Facility, an MDOC women's facility. *Complaint*, p.4 (Statement of Facts). There is a toilet in her cell, but not in the common area outside the cell. She states that when an inmate leaves her cell, the door locks automatically, and can only be opened by prison staff. In other words, "prisoners are not allowed to unlock their assigned cell doors to go into the cell or come out off their cell at will." *Id*.

On the date in question, Ms. Aikens was outside her cell, and requested to be let

-1-

into her cell to use the toilet. The matter being urgent, she pled with Defendant Boyd to be let into her cell, but Officer Boyd told her she was "not letting her in her cell at this time." *Id*.  When Ms. Aikens asked permission to use the staff toilet, Officer Boyd threatened that she would "tase" her if she did so, and "wantonly refus[ed] to open Plaintiff Aiken's cell door to allow her use of her cell toilet." *Id*.

Ms. Aikens states that she "beseeched" the officers to let her into her cell to use the toilet because "she was experiencing an urgency due to a medical issue which affects her bowels often in addition to the poor quality of prison chow hall food." She alleges that "staff" were aware of her medical condition. Due to the urgent nature of her need, "she went into the caustic closet to use the sink drain instead of defecating on herself, her clothes and the floor." Officer Mack then locked her in the closet. Officer Mack later wrote her a Class III misconduct ticket. *Id*.

Ms. Aikens brings an Eighth Amendment claim, claiming that "[i]t is cruel and unusual punishment to refuse Plaintiff use of a toilet and locking Plaintiff in the caustic closet when it was not reasonabl[y] related to legitimate penological interests." *Id*., at 5 (Statement of Claims). She seeks declaratory and monetary relief.

Defendant Mack's affidavit is appended to her motion [Doc. #21] as Exhibit 1. She states that on January 4, 2014, between 7:15 and 7:20 p.m., Ms. Aikens told her and other officers that she need to use the bathroom. Officer Mack told her that she would have to wait until the officers finished their rounds, which would be about five minutes. *Mack Affidavit*, ¶ 4. Ms. Aikens stated that if she could not use the toilet in her cell, she would use the staff bathroom. She was advised that such action was impermissible, and Officer Mack told her "not to make the situation worse by going into the staff bathroom without authorization." *Id*. ¶ 5. Shortly later, Officer Make observed Ms. Aikens enter a utility

closet and close the door. This utility closet was used by prisoners who were assigned to clean the housing units; there was a water source, and mop buckets were stored there. *Id*. ¶ 6. Officer Mack and Officer Santiago observed Ms. Aikens, via security camera, pull down her pants and sit on the sink. Three other prisoners also became aware of the situation, *Id*. ¶ 8, and "[d]ue to the rising concerns of the prisoners on the base at the time of the incident, the custody staff felt it was necessary to secure the door to the utilities closet." Their "purpose in doing this was to ensure the safety of prisoner Akens, the staff and prisoners who were in the general area." *Id*. ¶ 10. Officer Mack states that Ms. Aikens was secured in the utilities closet for approximately 2 to 4 minutes, during which time staff "maintained a visual on prisoner Aikens via the security monitor at the desk. This gave the officers enough time to secure the prisoners who were out at the time back into their cells." *Id*. ¶ 11. After the unit was secured, states Officer Mack, she unlocked the closet door and escorted Ms. Aikens to the Sergeant's office. Afterward, Ms. Aikens was given "the necessary tools to clean the utilities closet." *Id*. ¶ 12. Officer Mack states that at no time during this incident did Ms. Aikens mention any medical condition that would prevent her from controlling her bowels. *Id*. ¶ 14. Officer Mack does not specifically recall whether it was she who locked the closet door, but states that if it were, her actions would have been "consistent with MDOC policy and necessary considering the situation." *Id*. ¶ 14.

Officer Boyd has submitted her affidavit as Exhibit 1 to her summary judgment motion [Doc. #31]. Her recitation of facts is virtually identical to those provided by Officer Mack. She states that she was not verbally abusive to Ms. Aikens, and that her response to Ms. Aikens' request to use the bathroom was consistent with MDOC policy. *Boyd Affidavit*, ¶ 14. She states that she "used [her] best judgment to help secure the

situation, to assist and protect prisoner Aikens, and to protect the other prisoners." *Id.*
¶ 16.

## II.    LEGAL PRINCIPLES RE: QUALIFIED IMMUNITY

Qualified immunity is an affirmative defense.  A state official is protected by
qualified immunity unless the Plaintiff shows (1) that the Defendant violated a
constitutional right, and (2) the right was clearly established to the extent that a
reasonable person in the Defendant's position would know that the conduct complained
of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Under  *Saucier*, the inquiry
was sequential, requiring the district court to first consider whether there was a
constitutional violation.  However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the
Supreme Court held that the two-step sequential analysis set forth in *Saucier*  is no longer
mandatory.    Rather, *Pearson* commended the order of inquiry to the judge's discretion,
to be exercised on a case-by-case basis:

> "On reconsidering the procedure required in *Saucier,* we conclude that,
> while the sequence set forth there is often appropriate, it should no longer
> be regarded as mandatory. The judges of the district courts and the courts of
> appeals should be permitted to exercise their sound discretion in deciding
> which of the two prongs of the qualified immunity analysis should be
> addressed first in light of the circumstances in the particular case at hand."
> 555 U.S. at 235.

The doctrine of qualified immunity affords latitude to government actors who are
discharging their duties. In *Hunter v. Bryant*, 502 U.S. 224, 229 (1991), the Supreme
Court explained,

> "The qualified immunity standard 'gives ample room for mistaken
> judgments' by protecting 'all but the plainly incompetent or those who
> knowingly violate the law.' This accommodation for reasonable error exists
> because 'officials should not err always on the side of caution' because they
> fear being sued." (Internal citations omitted).

Once a defendant has met the burden of affirmatively pleading the defense, the

-4-

ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

## III.    DISCUSSION

Ms. Aikens claims an Eighth Amendment violation. While the constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), the Eighth Amendment, which prohibits "cruel and unusual punishments," does impose a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). There is both an objective and a subjective component to an Eighth Amendment claim regarding conditions of confinement. Under the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. at 833 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the subjective component, the prison official must have a "sufficiently culpable state of mind. *Id*. That state of mind is termed "deliberate indifference." In *Farmer v. Brennan*, 511 U.S. at 837, the Supreme Court defined "deliberate indifference" as a subjective test:

> "We hold...that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

A finding of deliberate indifference requires that the official have actual knowledge of a significant risk; it is not enough that he, she, or a reasonable person *should have* known. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id* at 838.

But even prison officials who have actual knowledge of a risk may be excused from Eighth Amendment liability if they act reasonably under the circumstances.

-5-

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety'... a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions'....Whether one puts it in terms of duty or deliberate indifference, *prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause*." *Id*. at 844-45 (internal citations omitted)(emphasis added).

In the present case, Ms. Aikens claims an Eighth Amendment violation based on her being denied bathroom facilities while corrections officers completed their rounds, and being locked in a utility closet for a short period of time. Applying a qualified immunity analysis, I will examine the second prong of *Pearson*– whether the constitutional right that the Defendants are accused of violating was clearly established, with reference to the specific facts of this case. The right in question, however, cannot be a generalized right.  "It must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendants' position to know that what the official is doing violates that right." *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir. 1989)(citations omitted).  *See also Myers v. Potter*, 422 F.3d 347, 356 (6th Cir.2005) ("[W]e do not assess the right violated at a high level of generality, but instead, we must determine whether the right [is] 'clearly established' in a more particularized ... sense"); *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir.1997) ("Because most legal rights are 'clearly established' at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly' violated").

-6-

There are circumstances under which the denial of bathroom facilities can constitute an Eighth Amendment violation, but the cases finding such violations are readily distinguishable from Ms. Aiken's case. For example, In *Barker v. Goodrich*, 649 F.3d 428 (6th Cir. 2011), the inmate was effectively denied the use of a toilet overnight, for about twelve hours. In addition, however, he was handcuffed behind his back in a detention cell for that period of time, missed a meal, was unable to sit or lie down without pain, or obtain water from a fountain. The Court discerned no legitimate penological purpose for these deprivations, and found that *in combination* they supported an Eighth Amendment claim. The Court found deliberate indifference because the evidence showed that the defendants knew that the plaintiff's restraints would make it difficult for him to lie down comfortably, push a button for water, or remove his pants to use the toilet, and chose to ignore these conditions as punishment.

In *Hope v. Pelzer*, 536 U.S. 730 (2002), the inmate was also denied the use of bathroom facilities. But there was much more; he was also handcuffed to a hitching post in the hot sun for an extended period of time and denied water.

In *Glaspy v. Malicoat*, 134 Fed.Supp.2d 890 (W.D.Mich. 2001), the plaintiff was the 69-year-old father of a prison inmate. While in the visiting room, both he and his son told the defendant corrections officer that he (the father) needed to urinate, and that it was an emergency situation. The officer told plaintiff that he would have to wait until count was completed. When plaintiff said that he did not think he could wait, the officer called the control center regarding plaintiff's request, but did not convey the urgent nature of that request; the officer at the control center therefore denied the request. When the plaintiff urinated in his pants, the officer laughed at him. During discovery, the control center officer testified that had he known of the urgency of the situation, he would have

allowed the plaintiff to use the restroom in the visitors' area. Because the plaintiff was not an inmate, the court analyzed the case under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment, finding a Due Process violation. The court found that the plaintiff had a "fundamental right to urinate," and that the defendant officer exercised his authority "without any reasonable justification in the service of a legitimate governmental objective." *Id*. at 895, quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). There is a clear difference between a situation involving a non-prisoner in a visiting area where there is no clear policy prohibiting a visitor's use of a public bathroom and one involving an inmate inside the prison. *See Parter v. Valone*, 2006 WL 3086900, *4 (E.D. Mich. 2006), distinguishing *Glaspy*. In *Parter*, the officers were dismissed on qualified immunity grounds, where an inmate was refused permission to leave the law library for a restroom during his two-hour library time, resulting in the inmate urinating on himself.

In assessing the reasonableness of an officer's actions, it is significant whether the officer had knowledge of an inmate's medical condition that required frequent bathroom use. As explained above, knowledge of a serious risk of harm is germane to the deliberate indifference inquiry. So in *Percival v. Stuhler*, 2016 WL 4536330, at *7 (W.D. Mich. 2016), the court dismissed an Eighth Amendment claim where there were no alleged facts that the officers had knowledge of a medical condition:

> "In this case, Plaintiff fails to allege facts showing that the named Defendants were aware of his medical need to use the bathroom more than once each hour, and that they denied him access to the bathroom despite this knowledge. Nor does Plaintiff allege that he received a medical accommodation for unfettered access to the bathroom based on his alleged diagnosis. Because Plaintiff has failed to allege facts showing that prison officials were deliberately indifferent to a diagnosed serious medical need, this claim is properly dismissed."

Ms. Aikens makes a conclusory allegation that "prison staff"  knew she had a

medical condition that required frequent bathroom use, but neither alleges nor provides *facts* to support that claim. Nor does she state what that medical condition is. She alleges that other inmates shouted out that she was HIV positive after she relieved herself in the utility closet, which was obviously after the Defendants denied her immediate bathroom use. But there are no facts showing that a symptom of being HIV positive is a need for frequent bathroom use. Accepting as true that prison food is bad, that would not qualify as a sufficiently serious condition. If it were, all inmates would have unlimited access to bathrooms at all times.

Other cases hold that there is no constitutional right to an inmate's immediate access to a bathroom on demand. *See Abdur-Reheem-X v. McGinnis*, 198 F.3d 244 (Table), 1999 WL 1045069 *2,  (6th Cir. 1999)("the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets");  *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511-12 (6th Cir. 2001) (no constitutional claim where prison deprived inmate of a lower bunk, subjected him to a flooded cell, and deprived him of a working toilet for an unspecified period of time); *Rivers v. Pitcher*, 68 F.3d 475 (6th Cir. 1995) (no claim where inmate was allowed to use the toilet every two hours).

Moreover, it is uncontested that the incident with Ms. Aikens occurred during rounds, a time when there are legitimate security concerns around the movement of inmates in and out of their cells. The staff bathroom did not have a security camera, and thus permitting an inmate to use that facility would create a security risk. Likewise, locking Ms. Aikens in the utility closet for a short time (between two and ten minutes) after she defecated in the sink was a security measure, not a punishment. Thus, it cannot be said that the Defendants had no legitimate penological purpose or motivation in refusing Ms. Aikens' request.

-9-

In short, there may be clearly established law that denial of use of a bathroom constitutes an Eighth Amendment violation under certain circumstances, eg., where the deprivation is for a significant period of time; where the denial is one part of a number of serious deprivations (such as being chained to a post in the hot sun or handcuffed overnight in a cell); where the officer has actual knowledge of an inmate's medical condition that requires frequent bathroom use; or where there is no legitimate penological justification for the denial. None of those circumstances is present in Ms. Aiken's case. To the contrary, and taking all of her allegations as true,  Defendants' actions were reasonable under the circumstances. *See Farmer v. Brennan*, 511 U.S. at 844-45. Stated differently, no "reasonable person in the Defendant[s'] position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. at 202. Accordingly, Defendants are entitled to qualified immunity.[1]

## IV.   CONCLUSION

I recommend that Defendant Mack's Motion for Summary Judgment [Doc. #21] and Defendant Boyd's Motion for Summary Judgment [Doc. #30] both be GRANTED on the basis of qualified immunity.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638

---

[1] This is not to say that the denial of bathroom facilities was commendable or that Ms. Aikens' request to use a bathroom was unreasonable. Indeed, given what is now seen as the urgency of her situation, and her Hobson's choice of using the utility sink or soiling herself, she likely made the best choice she could under the circumstances. In a more perfect world, she would have received an apology, not a misconduct ticket.

-10-

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: February 21, 2017

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on February 21, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager